UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X

AMERICAN CHRISTMAS DECORATIONS, INC.

        Plaintiff,

                                  05-cv-4946 (KMW)
   -against-
                                  AMENDED ORDER

HOLIDAY IMAGE, INC.,
MATTHEW N. SCHWAM, and STEVEN WILBURN

        Defendants.
--------------------------------------X

WOOD, U.S.D.J.:

I. Introduction

    Plaintiff American Christmas Decorations, Inc. ("ACD"), a Christmas installation provider, sues its new competitor, Holiday Image, Inc. ("Holiday"), and Holiday's two owners, Matthew Schwam (former President of Plaintiff) and Steven Wilburn. Plaintiff claims Defendants' actions violate federal copyright law, and, under New York state law, constitute unfair competition, trade slander, product disparagement, and tortious interference with prospective business relations. On June 1, 2005, the Court granted Plaintiff's request for a temporary restraining order, in order to preserve the status quo. On June 7, 2005, after hearing oral argument on Plaintiff's motion for a preliminary injunction, the Court converted the temporary restraining order into a preliminary

injunction, enjoining Defendants from using Plaintiff's designs and concepts, and/or any designs or concepts derived therefrom, in connection with any Christmas installations at The Shops at Columbus Circle (referred to herein as "The Shops"). The preliminary injunction did not contain the Court's findings of fact. The Court amends its preliminary injunction order to include the findings of fact set forth below (which are based on the record as of June 7, 2005).

On June 7, 2005, the Court set a July 11, 2005 trial date, with the parties' consent.

II. Findings of Fact

1. On April 11, 2003, Plaintiff first made contact with The Shops. The record is silent as to what was said or done on April 11, 2003, but the date and the purpose of the contact (to propose doing a Christmas installation for The Shops in 2003) are uncontested. (Matthew Schwam Dep. Tr. 45:14-23, 46:6-12.)

2. In July of 2003, Plaintiff first proposed to The Shops an elaborate Christmas installation featuring animated Moravian stars. (Id. 58:17-25, 59:2.) The Shops did not hire Plaintiff in 2003. (Frederic Schwam Aff. ¶ 60.)

3. On June 7, 2004, Plaintiff presented a changed Moravian star-themed proposal to The Shops, reflecting changes made to the July 2003 proposal in response to requests from The Shops. (Matthew Schwam Dep. Tr. 58:17-21; Am. Decl. Matthew West Ex. F.) Matthew Schwam, head of Plaintiff's sales department, made the June 7, 2004 proposal to The Shops (Frederic Schwam Dep. Tr. 9:10-24, 10:1); the cover page of the proposal contained the words "[Line 1] Prepared by: [Line 2] American Christmas Decorations [Line 3]

Matthew N. Schwam."

4. The Shops hired Plaintiff to design and install a less elaborate work for Christmas 2004; the installation was less elaborate than the one Plaintiff proposed, because The Shops did not obtain the necessary sponsors for an elaborate installation in 2004. (Aff. Frederic Schwam ¶ 61.)

5. On December 20, 2004, Plaintiff proposed to The Shops, for Christmas 2005, an elaborate installation that included (1) twelve large Moravian stars in three different sizes, suspended from the ceiling of The Shops' five-story atrium, positioned at varying heights; (2) LED programmable lighting embedded in the stars, that could be programmed to change the color and brightness of the stars; (3) a system to move the stars up and down, synchronized to music. (See Frederic Schwam Aff. ¶ 62, 69; Matthew Schwam Dep. Tr. 58:17-21.; Am. Decl. Matthew West Ex. G; Am. Decl. Matthew West Ex. H.) The above-described design and materials are referred to hereinafter as the "Moravian Star Design." Plaintiff's proposal included an artist's rendering of the Moravian Star Design. (Am. Decl. Matthew West Ex. H.) Plaintiff's proposal also included the proviso that if Plaintiff was hired to do this work, Plaintiff would be "credited as Project Developer in all press and advertising." (Am. Decl. Matthew West Ex. G at 4.) The cover page contained the words "Prepared by: American Christmas Decorations Matthew N. Schwam." (Am. Decl. Matthew West Ex. G.)

6. Some time after December 20, 2004, Plaintiff scheduled a meeting for February 7, 2005 with The Shops to continue discussions of its proposal. (Matthew Schwam Dep. 59:6-8, 63:17-25, 64:2-7.) Plaintiff expected Matthew Schwam to be Plaintiff's only representative at that meeting. (Id. 59:22-25.)

7. On February 7, 2005, Plaintiff terminated Matthew Schwam. (Frederic Schwam Dep. Tr. 11:1.)

8. That same day, February 7, 2005, Matthew Schwam contacted Webber Hudson, Chief Operating Officer of The Shops. (Matthew Schwam Dep. 60:2-10.) Matthew Schwam told Mr. Hudson that he could not meet with him

on February 7, 2005 in his capacity as Plaintiff's representative, because Plaintiff had terminated him. (Id. 60:13-20.) Matthew Schwam also told Mr. Hudson that he was forming his own holiday decoration company. Mr. Hudson agreed at that time to a meeting between The Shops and Matthew Schwam's new company. (Id. 60:20-25.)

9. As of February 8, 2005 Matthew Schwam had invested no time in preparing a proposal to procure a contract for any Christmas installation at The Shops, on behalf of anyone other than Plaintiff. (Id. 75:5-7.)

10. On February 8, 2005, the day after Plaintiff terminated Matthew Schwam, The Shops asked Matthew Schwam to create a DVD as part of his Christmas 2005 installation proposal. (Id. 90:15-25, 91:2.)

11. Matthew Schwam does not recall whether he had any of Plaintiff's Moravian Star Design materials in his possession when Plaintiff terminated him (Matthew Schwam Dep. Tr. 64:17-25, 65:2-6), but there is no dispute that The Shops possessed a copy of Plaintiff's Moravian Star Design proposal at the time Plaintiff terminated Matthew Schwam. (Frederic Schwam Dep. Tr. 53:7-12.)

12. Some time after February 7, 2005, Plaintiff asked The Shops to execute a confidentiality agreement prohibiting The Shops from sharing the Moravian Star Design with any of Plaintiff's competitors; The Shops refused Plaintiff's request. (Id. 52:21-24, 53:1-6.)

13. Between February 8, 2005 and February 25, 2005, Matthew Schwam spoke once or twice with representatives of The Shops, and discussed the timing and content of his prospective proposal. (Matthew Schwam Dep. Tr. 77:18-25, 78:2-12.) The Shops told Matthew Schwam that they wanted the proposal to be Moravian star-themed. (Id. 78:9-12.)

14. On February 25, 2005, Matthew Schwam met with representatives of The Shops. (Id. 82:6-10.) By then he was acting as President and Chief Executive Officer of Holiday.

15. The meeting that Plaintiff had initially scheduled for February 7, 2005 with The Shops was rescheduled to March 7, 2005. (Frederic Schwam Aff. ¶ 63.) At that meeting Plaintiff made its DVD presentation of its design proposal for Christmas 2005, which was "well received" by The Shops. (Id. ¶ 66.)

16. The only physical evidence offered by Defendants of any of Defendants' proposals to The Shops is a single image from a DVD used by Defendants at their March 10, 2005 and March 25, 2005 meetings with The Shops (referred to hereinafter as "Defendants' March 2005 Image"). (Am. Decl. Matthew West Ex. J.)

17. A comparison of Defendants' March 2005 Image and the Moravian Star Design shows that they are nearly identical: both have twelve Moravian stars suspended from the ceiling of The Shops' atrium, positioned at varying heights (Am. Decl. Matthew West Ex. J.), and both designs include the ability to program the stars to change colors, and to rise and fall to music. (Matthew Schwam Aff. 36.)

18. It is optimal for Christmas installation providers to sign contracts with clients by April of the year in which the installation will be provided. (Matthew Schwam Dep. Tr. 84:6-12.) July or August is the latest month by which a Christmas installation provider would contract to make an installation for that year. (Id. 84:13-21.)

19. On May 2, 2005, Plaintiff sued Defendants in New York County Supreme Court (Defs.' Notice Removal ¶ 1); Plaintiff filed an Order to Show Cause seeking, inter alia, to enjoin Defendants from contracting with The Shops. (Id. Ex. B at 2.) On May 3, 2005, Justice Fried denied Plaintiff's request for a temporary restraining order, finding that Plaintiff had failed to demonstrate "immediate and irreparable injury" based on the current record. (Id. Ex. D 32:5-13.) Justice Fried stated that the denial of injunctive relief should not be construed as implying that Plaintiff was not entitled to the relief, but rather that expedited discovery should occur to allow Plaintiff to acquire the evidence it needed to demonstrate that Defendants were unfairly competing

against Plaintiff.  (Id. Ex. D 35:9-18.)  On May 24, 2005, Defendant removed this case to federal court, pursuant to 28 U.S.C. § 1441, because Plaintiff raised federal copyright claims in its reply memorandum in support of its motion for a preliminary injunction. (Id. ¶ 8.)  On June 1, 2005, Plaintiff filed an Amended Complaint in this Court; the Amended Complaint includes a cause of action for federal copyright infringement.  (Am. Compl. ¶¶ 141-44.)

20. The record does not show that The Shops have contracted with Holiday to install The Shops' Christmas 2005 display.  In a June 2, 2005 affidavit, Matthew Schwam stated that "Holiday has been awarded a contract that was sent out for competitive bids" (Matthew Schwam Aff. ¶ 34.9); Matthew Schwam does not state whether this contract is the contract for The Shops' elaborate, proposed Christmas 2005 installation.  In fact, at the June 6, 2005 hearing, defense counsel did not state that Holiday had signed a contract with The Shops for Christmas 2005; he stated only that that The Shops have "expressed a desire to work with [Defendants], not [Plaintiff]." (June 6, 2005 Oral Argument Tr. 25:23-25.)

21. The 2005 Christmas installation at The Shops has the potential to be favorably reviewed in the holiday decoration trade magazines, which could result in enhanced reputation and good will for the installer, and which could result in future business.  (See, e.g., Matthew Schwam Aff. Ex. Q.)

III. Discussion

A party seeking injunctive relief that would alter the status quo must: (a) show that it will suffer irreparable harm in the absence of an injunction and (b) make a substantial showing of a likelihood of success on the merits.  See Tom Doherty Assocs. v. Saban Entm't, Inc., 60 F.3d 27, 34 (2d Cir.

1995).

a.  Irreparable Harm

The harm to Plaintiff is irreparable, because Plaintiff not only will lose the profit it might earn if it should be successful in obtaining The Shops' 2005 business, but also will lose the credit for designing and installing the Moravian Star Design at The Shops, which credit can enhance reputation and good will, and can be important in obtaining new business.[1]  See Register.com, Inc. v. Domain Registry of Am., 2002 U.S. Dist. LEXIS 24795, at *57 (S.D.N.Y. 2002).  The latter are irreparable because they are incapable of being fully remedied by money damages.

b.  Likelihood of Success on the Merits

The record reflects that (1) Matthew Schwam's name was on Plaintiff's June 7, 2004 and December 20, 2004 proposals; (2) Matthew Schwam had intimate knowledge of Plaintiff's Moravian Star Design, which design was developed by Plaintiff over twenty-two months with significant expenditure of labor and funds; (3) until February 7, 2005, Matthew Schwam had been

---

[1] The importance of such credit is reflected in Plaintiff's most recent proposal to The Shops, which included a provision that Plaintiff would be "credited as Project Developer in all press and advertising."  (Am. Decl. Matthew West Ex. G at 4.)

Plaintiff's primary representative in negotiating a contract with The Shops; (4) on February 7, 2005, the same day Plaintiff terminated Matthew Schwam, Matthew Schwam called The Shops to cancel his meeting in his capacity as Plaintiff's representative and to schedule a meeting in his capacity as the president of his own, new company; (5) on February 25, March 10, and March 25, 2005, Matthew Schwam met with The Shops and presented a proposal for a Christmas 2005 installation that was nearly identical to Plaintiff's Moravian Star Design; (6) on March 7, 2005, Plaintiff met with The Shops and presented its Moravian Star Design; (7) Either Christmas installation provider in this case must sign a contract by July or August 2005 in order to have enough time to produce a Christmas 2005 installation.

The Court has reviewed each party's Moravian Star Design for The Shops' Christmas 2005 installation. Although Defendants assert that Defendants' proposal does not constitute unfair competition, the current record does not support that assertion.

The Court finds, based on the present record, that Plaintiff is very likely to succeed in establishing that Defendants copied the Moravian Star Design (Plaintiff's work product created at considerable effort and expense), and then

used the Moravian Star Design to compete directly with Plaintiff.  See Roy Export Co. et al. v. Columbia Broadcasting System, Inc., 672 F.2d 1095, 1105 (2d Cir. 1982).

To establish that Defendants engaged in unfair competition, Plaintiff must demonstrate that Defendants committed some form of "commercial immorality."[2]  Id.  The Second Circuit found that a defendant committed commercial immorality when it profited from the use of Plaintiff's property (excerpts from Charlie Chaplin films used in a film compilation) to compete directly with a plaintiff's own Charlie Chaplin film compilation.  Id.

Similarly, the New York County Supreme Court found that a recording company engaged in unfair competition when it recorded, and commercially distributed, publicly broadcast performances of operas without the authorization of, and compensation to, the opera company that had invested labor and large sums of money in producing the opera performances, and that had sold the rights to commercially distribute recordings

---

2 Although the tort of unfair competition has been called "an amorphous cause of action [that] is capable of mischievous application," Roy Export, 672 F.2d at 1105, "New York courts have noted the 'incalculable variety' of illegal practices falling within the unfair competition rubric, calling it a 'broad and flexible doctrine' that … [prohibits] 'endeavoring to reap where one has not sown' … [and is ] adaptable and capacious." Id. (internal citations omitted).  The doctrine is designed to be capable of deterring unfair competition in new contexts, as business relationships become more complex.  Metropolitan Opera Ass'n v. Wagner-Nichols Recorder Corp., 199 Misc. 786, 792-93 (N.Y. Sup. Ct. 1950).

to companies other than defendant.3  Metropolitan Opera Ass'n v. Wagner-Nichols Recorder Corp., 199 Misc. 786 (N.Y. Sup. Ct. 1950).  The Court's reasoning in Metropolitan Opera was based on the proposition that unfair competition occurs when a defendant who was not burdened with the expense of cultivating business, has interfered with the normal operation of Plaintiff's legitimate business precisely at the point where the profit is to be reaped.  Id. at 794.

Plaintiff has made a substantial showing that it will be able to establish that Defendants appropriated for commercial value Plaintiff's twenty-two month investment of skill, labor, and expenditures, in the course of making proposals to The Shops for a Christmas 2005 installation contract.  See Roy Export, 672 F.2d at 1105.  Plaintiff has thus made a substantial showing of a likelihood of success on the merits with respect to its unfair competition claim.

---

3 With respect to the evolution of the tort of unfair competition from its origins as a remedy for the fraudulent representation of the goods of the seller as those of another (so called "palming off"), the Metropolitan Opera Court stated that "[t]he modern view as to the law of unfair competition does not rest solely on the ground of direct competitive injury, but on the broader principle that property rights of commercial value are to be and will be protected from any form of unfair invasion or infringement and from any form of commercial immorality, and a court of equity will penetrate and restrain every guise resorted to by the wrong-doer." Metropolitan Opera, 199 Misc. at 796.

## IV. Terms of Injunction

The terms of the June 7, 2005 injunction remain in effect. Defendants are enjoined from using Plaintiff's creative designs and technological concepts, and/or any designs or technological concepts derived therefrom, in connection with any Christmas installations at The Shops.

The June 7, 2005 Order converted the June 1, 2005 temporary restraining order into a preliminary injunction. The $5,000 security ordered in the June 1, 2005 temporary restraining order remains in effect. The Court will consider increasing the amount of the security as soon as Defendants state the costs and damages Defendants are likely to suffer, if they are found to have been wrongfully enjoined, and Plaintiff has an opportunity to respond.

During a June 16, 2005 telephone conference, Defendants stated their intention to move to vacate the injunction, in part because they expect to offer evidence that the 2005 installation design for The Shops has progressed so far that no other vendor can obtain The Shops' Christmas 2005 installation business. If that is the case, it would cast doubt on the likelihood that an injunction can "repair" any harm to Plaintiff.

## V. Scheduling

The Court hereby adopts the parties' proposed schedule for additional discovery and briefing related to any motion to vacate the preliminary injunction. The parties have agreed to orally argue any motion to vacate the preliminary injunction on July 11, 2005 at 10:00a.m. July 11, 2005 is the trial date to which the parties agreed. The Court hereby orders that trial on the merits be consolidated with the hearing on any motion made with respect to the preliminary injunction.

The Pre-Trial Order, proposed jury instructions, and proposed voir dire are due July 5, 2005, by 5:00 p.m.

SO ORDERED.

Dated: New York, New York
June 24, 2005

_____
Kimba M. Wood
United States District Judge